IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RUBEN GARCIA,**<br><br>Plaintiff,<br><br>v.<br><br>**CITY OF IMPERIAL, et al.**<br><br>Defendants. | Case No. 08cv2357 BTM (PCL)<br><br>**ORDER ON PLAINTIFF'S SECOND MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>**(Doc. No. 79)** |

## INTRODUCTION

Plaintiff, Ruben Garcia, a minor, brings this civil rights action for money damages pursuant to 42 U.S.C. § 1983 for alleged use of excessive force stemming from an incident which occurred on November 3, 2007. (Doc. No. 1, 2.) Plaintiff now moves the Court for an Order pursuant to Rule 37(a) of the Federal Rules of Civil Procedure compelling Defendants to produce (1) insurance or third party investigation reports of the incident; (2) Defendant Officers' financial information; (3) documents concerning "the alleged mixed martial arts training or and response tactics used by City police officers;" and (4) documents concerning investigations, reports, complaints or lawsuits alleging the use of excessive force by City officers. (Doc. No. 79-1 at 6.)

Defendants filed a response opposing the Motion. (Doc. No. 92.) Defendants argue the documents requested are protected by work-product and official information privileges as well as the Officers' right to privacy and are irrelevant in this litigation. (Id. generally.) In addition to providing Plaintiff a privilege log of the documents requested, Defendants have submitted one category of documents for in camera review.[1]

Having considered the arguments submitted for and in opposition to this Motion, the Court GRANTS in part, and DENIES in part, Plaintiff's Motion to Compel Production of Documents.

## BACKGROUND

Plaintiff alleges that on November 3, 2007, Officer Abel Heredia, a City of Imperial police officer, shot him in the back with a Taser while detaining him for investigation of a minor graffiti charge. (FAC, ¶¶ 14-21.) Plaintiff has brought claims under 42 U.S.C. § 1983 as well as tort claims against Officer Heredia and Officer Valenzuela, another officer at the scene. Plaintiff has also brought a Monell claim against the City of Imperial (the "City"), alleging that the City has unlawful customs or practices of (1) improper and inadequate hiring, training, retention, discipline and/or supervision of its police officers; and (2) permitting or condoning the application of excessive force, including the improper use of Tasers. (FAC, ¶¶ 43-49.)

(Doc. No. 62 at 1-2.)[2]

During the discovery process, Plaintiff served Defendant City of Imperial (hereinafter "City") with Request for Production of Documents Set No. 2 and Interrogatories Set No. 2 (Id. Ex. B) requesting insurance or third party investigation reports of the incident; documents concerning "the alleged mixed martial arts training" of citizens and "response tactics used by

---

1. At this time, the City has already produced the following relevant discovery: (1) all incident reports, memoranda, and personnel records concerning the subject incident; (2) discoverable portions of Heredia's and Valenzuela's personnel files, including any complaints of excessive force and investigations of same; (3) records of any complaints of Taser use for the period of 5 years prior to the incident through the date of filing of the complaint and investigation of same; (4) redacted police reports for all incidents concerning the use of a Taser for the period of one year prior to the incident through the date of filing of the complaint; (5) its Police Department policy manual sections concerning the use of the Taser, use of force and citizen complaints; (6) documents utilized to train its officers regarding the use of the Taser. (Doc. No. 92, Opp. at 1-2.)

2. The facts of this case are taken verbatim from the District Court's Order of April 5, 2010 overruling Plaintiff's objections to Magistrate Judge Lewis' November 30, 2009 ruling on Plaintiff's first request to compel production of documents in this action.

1  City police officers;" and documents concerning investigations, reports, complaints or lawsuits
2  alleging the use of excessive force by City officers.  (Doc. No. 79-3, Ex. A; Ex. B.)  Plaintiff also
3  served both Officers Valenzuela and Heredia with Requests for Production of Documents Set
4  No. 1 and Interrogatories Set No. 1 requesting financial documents to show annual salary, assets,
5  liabilities and net worth for the years 2007 through 2009.  (Doc. No. 79-3, Exs. C; E; D; F.)

6  Defendants declined to produce the requested documents citing various privileges, right
7  to privacy and relevancy issues.  (Id. Exs. G-L.)  On December 18, 2009, Plaintiff's counsel sent
8  a letter to Defendants in an attempt to "meet and confer" regarding the lack of production.  (Id.
9  Ex. M.)  The specific documents requested were not produced, however, Defendants prepared
10 and produced a privilege log regarding the requests for the insurance investigation reports on
11 February 10, 2010.  (Id. Exs. O; P.)  On March 18, 2010, Plaintiff's counsel wrote to Defense
12 counsel requesting a supplemental privilege log for the insurance reports.  (Id. Ex. Q.)
13 Defendants produced responses intended to supplement the privilege log in accordance with
14 Plaintiff's request on March 29, 2010.  (Id. Ex. R.)  The Court notes the correspondence between
15 the parties of April 7, 2010 (Id. Ex. S) and April 8, 2010 (Id. Ex. T) contains no dispute
16 regarding production of the Defendant Officers' financial records or documents concerning "the
17 alleged mixed martial arts training" of citizens and "response tactics used by City police
18 officers."

19 On May 25, 2010, Plaintiff filed this Motion.  (Doc. No. 79.)  By Minute Order dated
20 June 14, 2010, District Judge Moskowitz referred the Motion to the undersigned for decision.
21 (Doc. No. 85.)

22 **DISCUSSION**

23 Federal Rule of Civil Procedure 37(a) provides that upon "notice to other parties and all
24 affected persons, a party may move for an order compelling disclosure or discovery."

25  A party seeking discovery may move for an order compelling an answer,
    designation, production, or inspection . . if . . . a party fails to respond that inspection
26  will be permitted - or fails to permit inspection - as requested under Rule 34. . . .
    [E]vasive or incomplete disclosure, answer, or response must be treated as a failure
27  to disclose, answer, or respond.

28

1 Fed. R. Civ. P. 37(a)(3)(B), (4).

2     Generally, discovery may be obtained "regarding any nonprivileged matter that is
relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). Relevancy in the discovery context has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matters that bear on, any issue that is in the case. See Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 352 (1978) (citing Hickman v. Taylor, 329 U.S. 495, 501 (1947)). Therefore, a discovery request directed at discovering a matter which is not reasonably calculated to lead to the discovery of admissible evidence is not within the scope of Federal Rule of Civil Procedure 26(b)(1). See id. Consistent with this rule, discovery is not limited to the merits of a case, for a variety of fact-oriented issues may arise during litigation that are not related to the merits. See id.

    The Court notes Plaintiff's Motion requests documents and information in four distinct categories. As each of these categories is subject to analysis under a different privilege or doctrine of protection, the Court reviews each disputed request in turn.

**A.     Documents Regarding Insurance Investigation Reports of the Incident**

    In RFP No. 31, Plaintiff requests: "All documents concerning any investigation or evaluation conducted by ... any third party, including Carl Warren & Co. or employees or agents thereof, including Richard Marque, concerning the incident, including any investigation in response to the notice of claim filed by Luz Angelica Cendejas on May 1, 2008 pursuant to Gov't Code § 910." Similarly, RFP No. 32 requests: "All documents or correspondences between you and Carl Warren & Co., or employees or agents thereof, including Richard Marque, regarding Garcia or Luz Angelica Cendejas."

    At issue are three reports produced by Carl Warren & Co. dated May 15, 2008, July 23, 2008, and November 5, 2008.[3/] These reports were compiled by Pete McNulty and addressed to

---

3. Defendants have also produced an ISO Claimsearch Match Report Summary detailing all insurance claims filed by Plaintiff's family members or a person residing at Plaintiff's address; a transmittal letter dated May 6, 2008 from City of Imperial to Carl Warren & Co.; an instruction letter dated May 14, 2008 from Carl Warren & Co. to City of Imperial; Plaintiff's administrative claim filed with City of Imperial on May 2, 2008; and various photographs of Plaintiff submitted

Richard Marque of Carl Warren & Co. (CWC) following the administrative claim filed by Garcia on May 2, 2008.

1. <u>Legal Standard</u>

Under the work-product doctrine, Fed. R. Civ. P. 26(b)(3) applies not only to communications between attorney and client, but also, more broadly applies to both documents prepared by the "parties' attorney, consultant, surety, indemnitor, insurer, or agent." Fed. R. Civ. P. 26(b)(3)(A). Therefore, inasmuch as any of the questioned documents were prepared by claims adjusters or claims representatives of CWC and were prepared in anticipation of litigation, they are conditionally privileged.

Specifically, in order to qualify for work-product protection, the asserting party must show that the withheld materials are: (1) documents and/or tangible things; (2) prepared in anticipation of litigation or for trial; and (3) the documents or tangible things were prepared by or for the party or the attorney asserting the privilege. <u>See id.</u>; <u>In re California Pub. Utili. Comm'n</u>, 892 F.2d 778, 780-81 (9th Cir. 1989).[4/]

    a.    *In Anticipation of Litigation*

Central to the work-product doctrine is the requirement that the documents under its

---

with his administrative claim on May 2, 2008. The Court determines that none of these documents are the proper subject for this Motion to Compel because they are not relevant to the issues in this case or are already in Plaintiff's possession. The ISO Claimsearch Report lists all insurance claims filed by Plaintiff's family members which Plaintiff would already have knowledge of and the simple transmittal and instruction form letters bear no importance to the issues in this litigation. Further, Plaintiff's claim form and accompanying photographs are presumably in Plaintiff's possession since they were filed with the initial claim by Plaintiff.

4. Moreover, pursuant to Rule 26(b)(5)(A), when a party "withholds information otherwise discoverable" by invoking the doctrine, "the party must: (i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced . . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A). The supporting documents to this Motion to Compel show that Defendants produced a privilege log to Plaintiff on February 10, 2010 covering the disputed documents. (Doc. 79-3, Ex. P.) Thereafter, on March 29, 2010, Defendants supplemented the privilege log according to Plaintiff's requested specifications. (See <u>id.</u>, Ex. R.)

umbrella be "prepared in anticipation of litigation." Fed. R. Civ. P. 26(b)(3)(A).[5/] Under Ninth Circuit law, a document meets this requirement if it was prepared "*because of* the prospect of litigation." In re Grand Jury Subpoena, 357 F.3d at 908 (emphasis added) (adopting "because of" standard suggested by Wright & Miller Federal Practice, 8 Charles Alan Wright, Arthur R. Miller, & Richard L. Marcus, § 2024 (2d ed. 1994) [hereinafter Wright & Miller]). A document satisfies Rule 26(b)(3) under this standard if "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." Wright & Miller, § 2024.

Moreover, under the "because of" standard, it is irrelevant "whether litigation was a primary or secondary motive behind the creation of a document"; rather, a court must "consider[] the totality of the circumstances and afford[] protection when it can fairly be said that the 'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation[.]'" In re Grand Jury Subpoena, 357 F.3d at 908 (quoting United States v. Aldman, 134 F.3d 1194, 1195 (2d Cir. 1998)).

### b.   *Requesting Party's Burden: Substantial Need and Undue Hardship*

Lastly, unlike the more rigid attorney-client privilege, the work product rule "is not a privilege but a qualified immunity" in that it can be overcome in certain circumstances. Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona, 881 F.2d 1486, 1494 (9th Cir. 1989); see also Nobles, 422 U.S. at 238 n.11 (explaining that work product doctrine "is distinct from and broader than the attorney-client privilege"). Thus, "[a]lthough the rule affords special protections for work-product that reveals an attorney's mental impressions and opinions, other work-product

---

5. While the essence of the doctrine has been described in myriad ways, the Supreme Court most notably addressed the issue of work-product protections in the seminal opinion of Hickman v. Taylor, 329 U.S. 495 (1947). There, the Court read into the newly-enacted Federal Rules of Civil Procedure to limit the otherwise liberal discovery rules to prevent "unwarranted inquiries into the files and the mental impressions of an attorney." Hickman, 329 U.S. at 510. Furthermore, in an oft-quoted passage, the Court repeatedly mentioned "written materials obtained or prepared by an adversary's counsel with an *eye toward litigation*" that serves as the precursor to today's "in anticipation of litigation" requirement. Id. at 511 (emphasis added); see Fed. R. Civ. P. 26(b)(3)(A).

materials nonetheless may be ordered produced" if the requesting party makes a sufficient showing. Id. (citing Upjohn Co. v. United States, 449 U.S. 383, 401 (1981); cf. F.T.C. v. Grolier, Inc., 462 U.S. 19, 27 (1983) (explaining that "work-product materials are immune from discovery unless the one seeking discovery can show substantial need in connection with subsequent litigation"). Accordingly, in order to compel production of otherwise protected materials, a requesting party must show that: (1) "it has substantial need for the materials to prepare its case"; and (2) "cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(ii).

  2. Analysis

    a. *Imminency of Litigation*

  The first question which must be addressed is whether the documents City claims are privileged were prepared in anticipation of litigation. The fact that Garcia made a claim against Carl Warren & Co.'s insured did not necessarily transform all statements and information obtained by CWC's agents into privileged documents prepared in anticipation of litigation. Although many claims may be presented to CWC, not every claim results in a lawsuit. Therefore, to give Rule 26(b)(3) such a broad interpretation would be unreasonable. See Spaulding v. Denton, 68 F.R.D. 342, 345 (D.Del. 1975); Garfinkle v. Arcata National Corp., 64 F.R.D. 688, 690 (S.D.N.Y. 1974). On the other hand, the fact that CWC conducts an investigation into claims against its insured as a matter of routine does not necessarily mean that the investigation is not being conducted in anticipation of litigation, if other factors are present. Spaulding v. Denton, *supra* p. 345; 4 J. Moore, Moore's Federal Practice para. 26.64[3] (Supp.1982-83)

  In the present case, the accident which gave rise to the liability claim against City occurred on November 3, 2007. The records reviewed by the Court indicate that on May 2, 2008, Garcia filed a timely claim with City which triggered CWC's investigation into the incident to aid in a determination of liability. The initial report indicates CWC received the claim from City of Imperial and would initiate an investigation into the incident at issue. The next step that CWC indicated they would take was to conduct interviews of all involved persons, including the

1  claimant and the Officers, and "obtain all available police reports" to determine potential
2  liability.  This is the earliest date on which any pertinent document contained in CWC's
3  investigation file was generated.  It is obvious that Plaintiff's submission of a claim prompted
4  the subsequent interviews of Plaintiff's parents which would be discussed in the next report.  It
5  appears CWC believed litigation was imminent.
6        The next report in the investigation file is dated July 23, 2008.  This document reflects the
7  investigation done after the City had rejected Plaintiff's claim on June 28, 2008 and contains
8  information garnered from Plaintiff's parents, a review of official reports of the incident and a
9  determination of liabiltiy.  It can fairly be said that the "'document was created because of
10 anticipated litigation, and would not have been created in substantially similar form but for the
11 prospect of that litigation[.]'"[6]  Moreover, the report relies on the initial claim filed by Plaintiff,
12 the Police Department's reports regarding the incident and the ISO Claimsearch Report.  It
13 appears reasonable that Plaintiff already has the information relied upon to generate the report
14 and anything outside of that constitutes opinions and determinations made by an agent of the city
15 in anticipation of possible litigation.  See FRCP 26(b)(3)(A); United States v. Adiman, 68 F.3d
16 1495, 1501-02 (2d Cir. 1995).
17       The last report in the file indicates that "claimant's father has indicated that they are
18 represented by an attorney" and is dated shortly before litigation was commenced in the instant
19 suit. Therefore, this Court concludes that the three investigative reports generated by CWC
20 sought to be produced have a qualified immunity under the work-product doctrine.
21       b.   *Showing of Good Cause*
22       The next question is whether Plaintiff has made a showing of "substantial need" and
23 inability "without undue hardship" to obtain the substantial equivalent through other means.
24 Plaintiff has not stated why the documents are necessary to his case other to say "the documents
25 are directly relevant."   The Motion to compel submitted to this Court artfully argues the
26 inapplicability of various privileges to the investigation reports but fails to support the

---

28  6. In re Grand Jury Subpoena, 357 F.3d at 908 (quoting United States v. Aldman, 134 F.3d 1194, 1195 (2d Cir. 1998)).

08 CV 2357 BTM (PCL)

8

1  contention that good cause exists to overcome the qualified immunity the documents possess.
2  Moreover, the case cited by Plaintiff in support of compelling production of insurance claim files
3  in a civil suit is distinguishable here.  In Reavis v. Metro Prop. And Liab. Ins. Co., 117 F.R.D.
4  160, 162 (S.D. Cal. 1987), the Court ordered disclosure because the suit was based on claims
5  alleging mishandling of the insurance claim itself and the files contained information that was
6  highly probative to that plaintiff's claim.   No such showing of substantial need for these files is
7  shown here.
8  Therefore, the Court DENIES Plaintiff's Motion to Compel Production of RFP No. 31
9  and No. 32.

**B.  Documents Regarding Defendant Officers' Income, Assets and Liabilities**

In RFP No. 1, propounded to both Officers Heredia and Valenzuela, Plaintiff requests: "All documents sufficient to identify your annual salary, assets, liabilities, and net worth for 2007, 2008, and 2009, including tax returns and credit applications."  Similarly, in Interrogatory No. 1 propounded to both Officers, Plaintiff requests identification of the individual Officers' "annual salary, assets, liabilities, and net worth for 2007, 2008, and 2009."

Discovery may not be obtained regarding matters which are privileged. See Fed. R. Civ. P. 26(b)(1).  Privilege is a valid objection to discovery under Fed. R. Civ. P. 26(b)(5). Walt Disney Co. v. DeFabiis, 168 F.R.D. 281, 283 (C.D. Cal. 1996). To the extent privacy is a matter of privilege under state law, federal courts will honor the privilege and protect the responding party from discovery.  In California, the right to privacy is set forth in Article I, Section I of the California Constitution. It is not an absolute right, but a right subject to invasion depending upon the circumstances. Hill v. Nat'l College Athletic Ass'n, 7 Cal. 4th 1, 37 (1994). Moreover, the courts have frequently found that a party's need for the information may outweigh whatever privacy rights, if any, another party may have. Cook v. Yellow Freight Sys., Inc., 132 F.R.D. 548, 552 (E.D. Cal. 1990).

In this instance, the Court must engage in the balancing of Defendants' asserted privacy interests with the Plaintiff's need for the requested documents. See Sanchez v. City of Santa Ana, 936 F.2d 1027, 1033-34 (9th Cir. 1990).  Plaintiff claims the financial information

08 CV 2357 BTM (PCL)

requested is necessary to support his claim for punitive damages against the Officers in this case. In support of his contention, Plaintiff cites three district court cases where courts have ordered disclosure of similar financial information. However, Plaintiff's analogies to the instant case are misplaced. The Court notes in <u>Oakes v. Halvorsen Marine, Ltd.</u>, 179 F.R.D. 281, 286 (C.D. Cal. 1998), that Court determined the financial information at issue was relevant to a determination of punitive damages because the financial records might show the party's financial gain from the alleged tort. In that case, the Plaintiff/Counterdefendant was under suit for "intentional interference with business advantage" among other things. <u>Id.</u> Similarly, in <u>Santa Monica Baykeeper v. Kramer Metals, Inc.</u>, 2009 U.S. District LEXIS 69130, *10-11 (C.D. Cal. Feb. 27, 2009), the Court ordered disclosure because "defendant's net worth and financial status are relevant in calculating the economic benefit which resulted from violations of the [Clean Water Act] and the economic impact of a penalty on Kramer." In that case, the defendant corporation had enjoyed an economic benefit from its wrongdoing.

Lastly, Plaintiff claims the Court in <u>EEOC v. Cal. Psychiatric Transitions, Inc.</u>, 258 F.R.D. 391, 395 (E.D. Cal. 2009), permitted discovery of Defendant's financial condition because Plaintiff requested punitive damages in the complaint. (Doc. No. 79-1 at 14.) However, the Court in <u>EEOC</u> actually ordered disclosure on the basis that punitive damages would be allowed "if the complaining party demonstrates that the respondent engaged in a discriminatory practice … with malice or with reckless indifference to the federally protected rights of an aggrieved individual" under the prevailing statute *and* Plaintiff had made a showing that there was sufficient evidence obtained through discovery that Defendant may be subjected to punitive damages. Although "a [party] seeking punitive damages is entitled to discover information relating to the defendant's financial condition in advance of trial without making a prima facie showing that he is entitled to recover such damages," <u>U.S. v. Matusoff Rental Co.</u>, 204 F.R.D. 396, 399 (W.D. Ohio, 2001), Plaintiff must at least make *some* showing of entitlement to such damages before the Court considered ordering disclosure of such private information. Plaintiff has not submitted any evidence that tends to show that either of the individual Officers "acted maliciously and with wanton and willful disregard of the Constitutional rights of Garcia."

The Court determines Plaintiff's stated need for the Defendant Officers' financial information does not outweigh Defendants' privacy rights in this instance. Accordingly, the Court DENIES Plaintiff's request for production of documents as to Defendant Heredia's and Valenzuela's income, assets and liabilities.

**C.   Documents Regarding Mixed Martial Arts Training of Citizens and Response Tactics By City Police Officers**

In RFP No. 43, Plaintiff requests: "All documents concerning the possibility that suspects or subjects are trained in mixed martial arts, or any other form of martial arts, and any tactics, techniques, or responses to be used by officers with respect to subject or subjects who might be trained in such martial arts, including any training conducted by your police department in this regard."

Plaintiff submits portions of Officer Heredia's testimony in support of his contention that any documents relating to this "mixed martial arts training" are relevant to the issues in this case. Officer Heredia's testimony shows the following:

> Q   Would you consider the physical characteristics of the subject, the subject's size, height, and weight?
> A.  Not through policy, no. I don't believe it's in there.
> Q   Apart from policy, would you personally consider that?
> A   Well, as far as I know now, and throughout the training that I had, things I've seen on the streets, nowadays, I don't know if you're aware, but there's a lot of mixed martial arts training. Anybody now knows mixed martial arts, and pretty competent, and they're doing it. So as far as size and everything, I'm always cautious, regardless of the size.
> Q   What do you mean by mixed martial arts?
> A   It's – that's what – basically what it is is boxing, karate, kung fu, kicks, everything. Mix it all up. That's why they call it mixed martial arts.
> Q   How did you become aware of people having mixed martial arts training?
> A   Through personal experiences and also through training that we have at the Imperial Police Department.
> Q   And your training at the police department, are you given a sense of approximately what percentage of the population of the City of Imperial was likely to have this kind of training?
> A   No. I don't know what's the percentage of them, no.
> Q   Or the percentage of people you're likely to encounter in your duties?
> A   I would say maybe –
> Mr. McCormick:   He's asking if you were taught that through your training.
> Witness:   No. I wasn't taught that through my training, no. It was talked about. It was thrown out there as a – just to be conscious. But no. There was no specific numbers of how many people are doing this.
> By Mr. Blair-Loy:
> Q   As of November 2007, and specifically November 3rd, 2007, did you have a

```
1              sense at that time of, from training or any other basis, the percentage of
               people you're likely to encounter who would have this kind of mixed martial
2              arts training?
         A     Yes.
3        Q     What was that percentage?
         A     I don't know. Maybe three or four out of five people that I would talk to,
4              they would know or they would be currently in some type of mixed martial
               arts training.
5        Q     Three or four out of every five people you talked to?
         A     Probably, yeah.
6        Q     What kind of people were you talking to?
         A     Anybody that we would meet up with, talk to in the field. When you do field
7              interrogations, when you take calls. Just by personal experience. People that
               I know are doing that. I would go with them and see what they were doing.
8              Their friends, their relatives, my brother, cousins. I mean really a lot of
               people are doing this.
9        Q     And do you know where they go for this kind of mixed martial arts training?
         A     I believe there's a cmap in most every city in the valley. I now there's a
10             camp in Imperial, El Centro, Holtville, Heber – I'm not sure about Calexico
               – and Brawley.
11       Q     Is this something that arose after you were in the police academy?
         A     Yes.
12       Q     And you say its something that came up in your training at City of Imperial?
         A     Yes.
```

(Doc. No. 79-3, Ex. W at 124-26.)

Thereafter, in a letter dated January 8, 2010, defense counsel explains Defendant Heredia's testimony as follows:

> He did not testify that Ruben Garcia's possible training in mixed martial arts justified his use of a Taser, nor did Officer Heredia place either Ruben Garcia's mixed martial arts training or the training he received from mixed martial arts teams at issue. Heredia explained that generally he is always cautious of a suspect, regardless of size, because there are martial arts training facilities in most every city in Imperial Valley. Heredia explained he received training from a mixed martial arts team through the City of Imperial about how to respond if someone with mixed martial arts training was to attack him, specifically, how to cover guns at all times and try to get the suspect away from the officer or on top of the officer.

(Doc. No. 79-3 at 96.) The Court notes in later correspondence, Plaintiff did not dispute defense counsel's interpretation of Defendant Heredia's testimony except to reiterate that Plaintiff was "also entitled to discovery of documents regarding the training of suspects in mixed martial arts, which was requested by Request for Production No. 43." (Doc. No. 79-3 at 104.)

First, the Court determines Defendant Heredia did not actually state he had received any training regarding how to apprehend suspects with mixed martial arts training through the

1  Imperial Police Department.  In fact, the portion of the deposition available for the Court's
2  review follows questioning regarding consideration of a suspect's physical characteristics such
3  as size, height and weight.  Heredia specifically stated that he did not consider these
4  characteristics through department policy but he personally considered these characteristics
5  because of "things I've seen on the streets."  He then followed up his assertion by explaining that
6  he was aware of suspects having mixed martial arts training from his encounters with people he
7  "talk[s] to in the field" including "friends, their relatives, my brother, cousins."  Heredia never
8  actually testified that he received training on how to apprehend suspects with mixed martial arts
9  training either during the police academy or during his training with the City of Imperial except
10 to testify that "it was thrown out there as a – just to be conscious."
11         However, because this litigation revolves allegation of excessive force by deployment of
12 a Taser, the Court concludes that if any training documents exist that *specifically relate to* the
13 use of a Taser when confronting a person with suspected "mixed martial arts training," such
14 documents are discoverable.  Simple knowledge of "mixed martial arts training of citizens" and
15 evidence of Officers' training in "response techniques" towards citizens suspected of having
16 "mixed martial arts training" that *do not involve the use of a taser* are irrelevant here because
17 there is no evidence to suggest Plaintiff was suspected of having such "mixed martial arts
18 training."  Plaintiff's Request for Production No. 43 is granted to the limited extent articulated
19 above.  If no such documents exist, Defendant must so state.
20 **D.     Documents Regarding "Use of Force" Investigations, Reports and Complaints**
21         Plaintiff's RFP No. 35 requests: "All documents concerning any investigation, internal
22 investigation or evaluation conducted by you concerning the use of force by your police officers
23 in the 5 years prior to the date of the complaint."  Plaintiff's RPF No. 37 requests: "All
24 documents constituting or regarding reports, complaints or lawsuits that have been made in the 5
25 years prior to the date of the complaint against your police officers concerning their use of
26 excessive force." (Doc. No. 79-3 at 7.)
27         Similarly, Plaintiff's Interrogatory No. 14 states: "Identify the name, date and subject
28 matter of each report, complaint or lawsuit concerning the use of excessive force by your police

officers that has been made in the 5 years prior to the date of the complaint," and Interrogatory No. 15 states: "Identify and describe in detail any acts that involved use of force by your police officers during the course of duty, which resulted in your police officer being counseled, reprimanded, suspended from duty for any length of time, or otherwise disciplined in the 5 years prior to the date of the complaint." (Doc. No. 79-3 at 17.)

The Court finds that Plaintiff's fourth request presented in this Motion has been previously been decided by implication in the April 5, 2010 Order of the District Court. (See Doc. No. 62.) Under the law of the case doctrine, "when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."[7] Arizona v. California, 460 U.S. 605, 618-19 (1983) (citing 1B J. MOORE & T. CURRIER, MOORE'S FEDERAL PRACTICE, ¶ 0.404 (1980)). This rule applies with equal force regardless of whether an issue presented for reconsideration has already "been decided by the same court, or a higher court in the identical case." United States v. Alexander, 106 F.3d 874, 876 (9th Cir. 1997) (quoting Thomas v. Bible, 983 F.2d 152, 154 (9th Cir. 1993), cert. denied, 508 U.S. 951 (1993)). Further, before the doctrine is invoked, "the issue in question must have been 'decided explicitly or *by necessary implication in [the] previous disposition*.'" United States v. Lummi Indian Tribe, 235 F.3d 443, 452 (9th Cir. 2000) (quoting Liberty Mut. Ins. Co. v. EEOC, 691 F.2d 438, 441 (9th Cir. 1982)(emphasis added). The Court finds this doctrine applicable for the discovery issue presented here.

Following this Court's ruling on Plaintiff's previous request to compel similar discovery, Plaintiff filed Objections with the District Court seeking reversal of this Court's denial. In his Order of April 5, 2010, District Judge Moskowitz overruled Plaintiff's Objections but determined:

> [T]he discovery period is still open, and Plaintiff may propound a new document request for reports regarding Taser use during the narrowed time period. If Plaintiff

---

7. The rationale for such a rule is primarily judicial efficiency and consistency during the course of a lawsuit. See Miglard Tempering, Inc. v. Selas Corp. of Am., 902 F.2d 703, 715 (9th Cir. 1990) ("The law of the case doctrine is a judicial invention designed to aid in the efficient operation of court affairs."); United States v. Houser, 804 F.2d 565, 567 (9th Cir. 1986).

      makes such a request, the Court believes that the reports are relevant to Plaintiff's <u>Monell</u> claim and should be produced with the names of the private citizens and police officers (except Valenzuela) redacted, at least initially, to address any privacy concerns. [footnote omitted] The Court agrees with Plaintiff that the mere fact that no complaint was filed in connection with a Taser incident does not mean that there was no improper use of the Taser. Furthermore, the brief factual descriptions of the incidents set forth in the Outline clearly are not sufficient to determine whether the Taser was potentially improperly used; the City's summary characterization of the incidents does not allow Plaintiff to examine the "totality of the circumstances" to determine the City's interest in the use of force. See <u>Franklin v. Foxworth</u>, 31 F.3d 873, 876 (9th Cir. 1994). [footnote omitted] If, after production of the incident reports, Plaintiff believes that the reports reveal that a Taser was potentially improperly used during one or more incidents, Plaintiff may then seek additional discovery regarding the incidents in question, including the identity of the participants.

(Doc. No. 62 at 5-6.)

      The Court agrees with the District Court's Order. Reports regarding Taser use are relevant to Plaintiff's <u>Monell</u> claim and should be produced. Reports regarding excessive use of force involving the Defendants Officers are also relevant and should be produced. However, the Court has already ordered production of all reports of incidents of Taser use for the period encompassing one year before and one year after the filing of the complaint and all reports and citizen complaints of excessive force against each of the named Defendants in this litigation. The scope of Plaintiff's lawsuit is the allegation of improper use of a Taser and the claim that "the City, through the Department, has unlawful customs and practices of improper and inadequate hiring, training, retention, discipline and/or supervision of its police officers, proximately causing the constitutional deprivations, injuries and damages alleged in this Complaint." Plaintiff has not shown that *every* report referencing *every* allegation of excessive force is relevant to the issues in *this* litigation *and* outweighs the privacy interests of the citizens and other officers involved in those incidents.

      Therefore, Plaintiff's RFP No. 35 and 37 and Interrogatory No. 14 and 15 are denied to the extent they are inconsistent with the production of documents already ordered by this Court and determined relevant by the District Court's Order of April 5, 2010. (Doc. No. 62.)

/ /

/ /

/ /

**CONCLUSION**

Plaintiff's Motion to Compel Production is **GRANTED** as to City RFP No. 43 as follows:

Defendants are ORDERED to produce documents responsive to RFP No. 43 only to the extent that such documents specifically relate to the use of a Taser when confronting a person with suspected "mixed martial arts training."

Plaintiff's Motion to Compel is **DENIED** as to City of Imperial RFP No. 31, No. 32, No. 35, No. 37 and Interrogatory No. 14 and No. 15; Heredia RFP No. 1 and Interrogatory No. 1; and Valenzuela RFP No. 1 and Interrogatory No. 1.

Defendants are ordered to disclose the documents specified in this Order, if any exist, within fifteen (15) days from the date of this Order under the procedure applicable in this case pursuant to the protective order granted on July 30, 2009. (Doc. No. 20.)

**IT IS SO ORDERED.**

DATE: July 30, 2010

_____
Peter C. Lewis
U.S. Magistrate Judge
United States District Court